# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

THOMAS RANGE, #190180,

                Petitioner,

v.                                        Case No. 09-10945

MARY BERGHUIS,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING A CERTIFICATE OF APPEALABILITY

### I. INTRODUCTION

Michigan prisoner Thomas Range has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in custody in violation of his constitutional rights. Petitioner was convicted of second-degree home invasion, MICH. COMP. LAWS § 750.110a(3), following a jury trial in the Wayne County Circuit Court and was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to 15 to 30 years imprisonment in 2006. In his petition, he raises claims concerning the late addition of an expert witness, the conduct of the prosecutor, the identification procedures, the sufficiency of the evidence, the non-disclosure of evidence, the admission of arrest evidence, the accuracy of the trial transcripts, a delay in arraignment, and the effectiveness of trial and appellate counsel. Respondent contends that the habeas petition should be denied. For the reasons set forth, the court denies the petition and denies a certificate of appealability.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner's conviction arises from a home invasion that occurred in Westland, Michigan on October 7, 2005. The court adopts the statement of facts set forth by the Michigan Court of Appeals, which is presumed correct on habeas review. *See* 28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are as follows:

> On October 7, 2005, at about 8:30 a.m., Gordon Muenchow left his Westland, Michigan, home, locking his house before leaving. Later that morning, Patrick Rokita, a neighbor of Muenchow's, saw defendant walking toward Muenchow's house and called the police. Jonathan Vincent, another neighbor, also saw defendant walking toward Muenchow's house. A short time later, Vincent saw defendant in Muenchow's front yard.
>
> Officer Robert Wysong of the Westland Police Department arrived in the neighborhood soon after Rokita and Vincent made their observations. Wysong saw defendant leave Muenchow's front yard with a bag over his shoulder. Defendant walked down the street and was stopped by Officer Kevin Wojcik in front of a nearby group home that served the mentally and physically disabled. When asked, defendant told Wojcik that he was in the area to visit his girlfriend at the group home.
>
> To test defendant's story, Wojcik told defendant to enter the group home and ask a worker if she knew who he was. Defendant asked Christina Lackley, an employee of the group home working at the front desk, if she knew "Tex" or his girlfriend, who was named either Felicity or Felicia. Lackley told defendant that she did not know these individuals and that they were not on the employee roster. Defendant then told Lackley that the police were harassing him and asked if he could stay at the group home until the police left the area. Lackley denied his request and asked him to leave. After defendant left the group home, the officers asked for defendant's driver's license and recorded the information. They then allowed defendant to leave.
>
> About the time Wojcik and defendant were interacting, Muenchow returned home. He found wood splinters and paint chips on his kitchen floor and discovered that the door jam to the kitchen door was broken and split apart. A handgun, a watch, jewelry, a Sam's Club membership card, and a blue duffle bag were missing from his house. After allowing defendant to leave, the officers were informed of a reported home invasion at Muenchow's residence. Wysong investigated Muenchow's house and

2

noticed that the back door had been kicked in. Sergeant Stephen Borisch, the officer in charge of the case, investigated Muenchow's house. Borisch noticed that the exterior door leading to the kitchen was damaged and had smudges on it that may have been a footprint.

The next day, Dearborn Police Department officers effected a traffic stop of a vehicle that defendant was driving because the license plates were not properly registered. Muenchow's duffle bag and Sam's Club card were in the backseat of the vehicle. The officers ran a check of defendant's license and discovered that he had an outstanding arrest warrant. Defendant was subsequently arrested.

Borisch interviewed defendant after his arrest. During the interview, he told defendant that the police had confiscated Muenchow's duffle bag. After learning this, defendant promised that he would retrieve the items that were stolen from Muenchow's house if the police released him on bond.

After the interview, Borisch confiscated defendant's shoes and sent them to the Michigan State Police Trace Evidence Unit for testing. Guy Nutter, an expert in trace evidence detection, tested Muenchow's kitchen door using a special lighting technique and discovered footwear impressions. Nutter determined that these impressions were consistent with the treads on defendant's right shoe. The prosecution received these test results on the first day of trial. The trial court permitted Nutter's late endorsement as a witness, and he testified the following day regarding his analysis of the evidence.

*People v. Range*, No. 270831, *1-2 (Mich. Ct. App. Aug. 21, 2007) (unpublished).

At the close of trial, the jury convicted Petitioner of second-degree home invasion. The trial court subsequently sentenced him, as a fourth habitual offender, to 15 to 30 years imprisonment.

Petitioner filed an appeal of right with the Michigan Court of Appeals raising claims concerning the late endorsement of the expert witness, the validity of his sentence, the trial court's jurisdiction (complaint, charges, and arrest warrant), the conduct of the prosecutor, the admission of his police statements, the non-sequestration of a police witness, the identification procedures, the sufficiency of the evidence, the

3

non-disclosure of evidence, his confrontation rights, and the effectiveness of trial counsel.  The court denied relief on those claims and affirmed Petitioner's conviction. *People v. Range*, No. 270831 (Mich. Ct. App. Aug. 21, 2007) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order.  *People v. Range*, 743 N.W.2d 24 (Mich. 2008).

In 2009, Petitioner filed his initial federal habeas petition, along with a motion to stay the proceedings so that he could return to state court to exhaust his remedies as to additional claims.  The court granted the motion to stay, held the matter in abeyance, and administratively closed the case on April 23, 2009.

Petitioner returned to the state trial court and filed a motion for relief from judgment raising claims concerning the non-disclosure of evidence, the admission of arrest evidence, inaccuracies in the trial transcripts, a delay in arraignment (longer than 48 hours), prosecutorial misconduct, and the effectiveness of trial and appellate counsel.  The trial court denied the motion finding that Petitioner failed to demonstrate good cause and actual prejudice under Michigan Court Rule 6.508(D)(3) and that appellate counsel was not ineffective.  *People v. Range*, No. 05-010939-01 (Wayne Co. Cir. Ct. Jan. 25, 2010).  The trial court also denied reconsideration.  Petitioner filed an application for leave to appeal with the Michigan Court of Appeals, which was denied "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Range*, No. 302276 (Mich. Ct. App. Aug. 30, 2011) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was similarly denied.  *People v. Range*, 809 N.W.2d 572 (Mich. 2012).

Petitioner filed an amended petition in 2012 and the court re-opened the case for

further proceedings on July 9, 2012.  In his habeas petition, as amended, Petitioner

raises the following claims:

I.      The trial court violated Petitioner's constitutional right to a fair trial by allowing the prosecutor to add a new expert the afternoon of the first day of trial.

II.     Petitioner is entitled to a new trial because his trial counsel was ineffective for failing to question Officer Wysong about his observation that there were no visible shoeprints on Muenchow's door.

III.    Constitutional error occurred under the 14th Amendment when the prosecutor's illicit actions created a manifest injustice by impeding Petitioner from receiving substantive and substantial due process in a court of law.

IV.    Constitutional error occurred under the 14th Amendment when a state witness was shown a single photo of Petitioner which was impermissibly suggestive, especially since Petitioner was in custody and available and entitled to a corporeal lineup.

V.     Constitutional error under the 6th and 14th Amendment when trial counsel's performance was objectively unreasonable and deprived Petitioner of effective representation.

VI.    Trial counsel was ineffective for failing to call a res gestae witness, Officer Price, to confirm his initial report.

VII.   Petitioner was denied due process of law when exculpatory evidence known by the prosecutor was held from the defense. There was a scout car video showing Petitioner picking up a duffle/carry-on bag from the lawn of a home while he was walking down the street, which proves Petitioner's actual innocence.

VIII.  The trial court violated Petitioner's right to a fair trial by allowing testimony regarding the reason for Petitioner's traffic stop the night of his arrest. This displayed dishonest intent and was a bad act by the prosecutor, as this testimony was not relevant to the home invasion.

IX.    Petitioner is entitled to a new trial, or in the alternative, is entitled to review the audio tapes of the trial, where there are numerous inaccuracies in the trial transcription which has adversely affected his appellate rights.

5

X.   Petitioner was denied due process when he was not arraigned within 48 hours after his arrest as mandated by law and the delay was for the sole purpose of obtaining any incriminating evidence.

XI.   Petitioner was denied due process of law and a right to a fair decision from the jury when the prosecutor misled the jury concerning evidence seized, and asserted fact not in evidence.

XII.   Petitioner is entitled to a new trial because his trial counsel was ineffective for failing to conduct a thorough investigation and to consult with or present a trace evidence expert for Petitioner to challenge the opinion of the prosecution's expert.

XIII.   Appellate counsel denied Petitioner his right to effective counsel on appeal by failing to obtain an entire record and failing to investigate possible perjured evidence and raise meritorious issues on appeal.

Respondent has filed an answer to the petition contending that it should be denied

because the claims are barred by procedural default and/or lack of merit.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified

28 U.S.C. § 2241 *et seq.*, provides the standard of review for federal habeas cases

brought by state prisoners.  AEDPA provides in relevant part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a

6

rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63,

75 (2003)).  Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court" quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  While the requirements of "clearly established law" are determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in

8

assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A habeas petitioner may rebut this presumption only with clear and convincing evidence.  *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is "limited to the record that was before the state court."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

## IV.  DISCUSSION

### A.  Procedural Default

As an initial matter, Respondent contends that several of Petitioner's habeas claims are barred by procedural default.  It is well-settled, however, that federal courts on habeas review "are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  The Supreme Court has explained the rationale behind such a policy:  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the procedural issues are intertwined with Petitioner's ineffective assistance of trial and appellate counsel claims and the substantive issues are easier to resolve such that the interests of judicial economy are best served by addressing the merits of Petitioner's claims.

9

## B. Merits

### 1. Late Addition of Expert Witness

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in allowing the prosecution to add an expert witness, Guy Nutter, on the first day of trial. Nutter testified about the shoe print evidence. Petitioner raised this claim on direct appeal. The Michigan Court of Appeals denied relief finding that the trial court had good cause to allow the late endorsement of the witness under state law because the prosecutor had just learned that the forensic tests were completed, that Petitioner had not shown that he was prejudiced by the late endorsement, and that any error in admitting the expert's testimony was harmless given the other significant evidence of guilt presented at trial. *Range*, 2007 WL 2380277 at *2.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988) (citing *Weatherford*). A decision regarding the endorsement of a witness generally constitutes a state law matter within the trial court's discretion. *See Hence v. Smith*, 37 F. Supp. 2d 970, 982 (E.D. Mich. 1999) (citing cases); *Whalen v. Johnson*, 438 F. Supp. 1198 (E.D. Mich.1977) (it is not a fundamental error to permit a prosecutor to endorse a witness during trial even though the prosecutor had previously filed an affidavit stating that the witness was not material). A federal habeas court may only grant habeas relief

10

to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519-20 (6th Cir. 2007)); *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69-70).

This court will not disturb the state court's determination that the late endorsement of the witness was proper under Michigan law. State courts are the final arbiters of state law and federal courts do not intervene in such decisions. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Moreover, Petitioner fails to demonstrate that his trial was rendered fundamentally unfair by the late endorsement of Guy Nutter. The evidence from Nutter only became available on the first day of trial. Defense counsel had the opportunity to fully cross-examine the witness at trial and did not ask for a continuance. Petitioner was not deprived of exculpatory evidence nor denied the ability to prepare an adequate defense. The late addition of the witness did not deprive Petitioner of a fair trial. Habeas relief is not warranted on this claim.

### 2. Conduct of the Prosecutor

Petitioner also asserts that he is entitled to habeas relief because the prosecutor

11

engaged in misconduct during opening statements and closing arguments.  Petitioner raised these issues in his pro se supplemental brief on direct appeal and in his motion for relief from judgment on collateral review.  On direct appeal, Petitioner claimed that the prosecutor engaged in misconduct during opening statements by stating that the victim's neighbors saw Petitioner casing his house and that Petitioner told Detective Borisch that he could retrieve the stolen items.  He also claimed that the prosecutor made "egregious" statements that denied him a fair trial.  The Michigan Court of Appeals denied relief on these claims ruling that the prosecutor's opening statements were supported by testimony from witnesses Rokita, Vincent, and Borisch and ruling that Petitioner failed to identify other improper statements such that the claim was abandoned on appeal.  *Range*, 2007 WL 2380277 at *6.  On collateral review, Petitioner claimed that the prosecutor engaged in misconduct during closing arguments by asserting that items stolen from the victim's house were taken out of the duffle bag that Petitioner was carrying when he was arrested.  The state trial court denied relief on this claim finding that the prosecutor's argument was supported by testimony that a duffle bag containing some items missing from the victim's house was found in Petitioner's car and that any misstatement did not result in a miscarriage of justice. *Range*, No. 05-010939-01 at *6.

The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[1]  The Supreme Court has made clear that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction."  *Berger v. United States*, 295 U.S. 78, 88 (1935).  To prevail on a

_____

[1]The court would reach the same result under a *de novo* standard of review.

12

claim of prosecutorial misconduct, however, a habeas petitioner must demonstrate that the prosecutor's conduct or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citing *Donnelly*); *Parker v. Matthews*, _ U.S. _, 132 S. Ct. 2148, 2153 (2012) (confirming that *Donnelly/Darden* is the proper standard).

Petitioner fails to establish that the prosecutor's opening statement was improper and/or it rendered his trial fundamentally unfair. Although a prosecutor's comments during opening statements may be so prejudicial as to support a finding of constitutional error, *Frazier v. Cupp*, 394 U.S. 731, 736 (1969), there is no error if the prosecutor gives an "objective summary of evidence which the prosecutor reasonably expects to produce," even if events at trial prevent the prosecutor from actually presenting that evidence. *Id.* In this case, the prosecutor gave an objective summary of the evidence reasonably expected at trial and the prosecutor's opening statements were consistent with the testimony given by the victim's neighbors and Detective Borisch. The prosecutor did not engage in misconduct.

Petitioner also fails to establish that the prosecutor's closing argument was improper and/or that it rendered his trial fundamentally unfair. While prosecutors may not misstate the evidence, *United States v. Carter*, 236 F.3d 777, 784 (6th Cir. 2001), or argue facts not in evidence, *Abela v. Martin*, 380 F.3d 915, 929 (6th Cir. 2004), they have "'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (quoting *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)). In this case, the record reveals that

13

the prosecutor's closing argument was supported by the evidence presented at trial and reasonable inferences therefrom. The victim testified that the duffle bag was taken from his home, witnesses saw Petitioner in the neighborhood, the police observed Petitioner in the neighborhood carrying a bag, and the police recovered the duffle bag containing some items taken from the victim's home after they arrested Petitioner during the traffic stop, and the police testified that Petitioner said he could retrieve other stolen items. Such testimony supported the prosecutor's closing argument. The prosecutor did not commit misconduct. Habeas relief is not warranted on this claim.

### 3. Identification Procedures

Petitioner asserts that he is entitled to habeas relief because the police used a single-photograph identification procedure when he was available for a corporeal lineup and had the right to a lineup and the presence of counsel. Petitioner raised this claim in his supplemental brief on direct appeal. The Michigan Court of Appeals denied relief finding that the procedure was proper because it was not unduly suggestive and Petitioner failed to establish plain error or that any error affected his substantial rights. *Range*, 2007 WL 2380277 at *7-8.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. First, a criminal defendant has no federal constitutional right to a corporeal lineup. *See Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (citing cases); *see also Morris v. Giurbino*, 162 F. App'x 769, 771 (9th Cir. 2006) ("The United States Supreme Court has never held that a criminal defendant has a constitutional right to a pretrial lineup."); *McMillan v. Berghuis*, No. 1:06-cv-057, 2009 WL 3877510, *25 (W.D. Mich. Nov. 18, 2009). Second, there is

14

no federal constitutional right to counsel at a photographic array, *United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007). Petitioner's claim that he was entitled to a corporeal lineup and/or counsel at the photographic array is based upon a perceived violation of state law.  It is well-established, however, that habeas relief is not available to correct a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  Petitioner thus fails to state a claim upon which habeas relief may be granted as to such issues.

Third, Petitioner is not entitled to relief on his claim that the photographic identification procedure was unduly suggestive.  Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures.  *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  There is a two-step procedure to determine whether an identification can be admitted consistent with due process.  The first step is to determine whether the identification procedure was impermissibly suggestive.  *Ledbetter v. Edwards*, 35 F.3d 1062, 1070-71 (6th Cir. 1994). If it was, the second step is to determine whether the identification nonetheless has sufficient indicia of reliability considering all the circumstances.  *Id.*  Five considerations bear on the reliability of an identification: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the suspect at the confrontation; and (5) the length of time that has elapsed between the

15

time and the confrontation.  *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).  A criminal

defendant has the initial burden of proving that the identification procedure was

impermissibly suggestive.  It is only after a habeas petitioner meets this burden of proof

that the burden shifts to the state to prove that the identification was reliable.  *Johnson*

*v. Warren*, 344 F. Supp. 2d 1081, 1090 (E.D. Mich. 2004).

In this case, Petitioner fails to show that the photographic identification was

unduly suggestive.  The police did not tell the witness that Petitioner was the

perpetrator.  Nonetheless, even if the procedure was suggestive, it was reliable.  The

witness testified that he had ample opportunity to observe Petitioner and paid attention

to him as he walked near the victim's house, the witness was certain about his

identification, and the witness made his initial identification within days of the crime.

Because the identification was reliable, Petitioner fails to establish a violation of his

federal constitutional rights.  Habeas relief is not warranted on this claim.

### 4. Sufficiency of Evidence

Petitioner asserts that he is entitled to habeas relief because the prosecution

failed to present sufficient evidence to support his second-degree home invasion

conviction.  Petitioner raised this claim in his supplemental brief on direct appeal.  The

Michigan Court of Appeals denied relief on this claim finding that the prosecution

presented sufficient evidence to support Petitioner's conviction.  The court explained:

> Due process requires the evidence to show guilt beyond a reasonable
> doubt to sustain a conviction. *People v. Wolfe*, 440 Mich. 508, 513-514;
> 489 N.W.2d 748 (1992). In determining the sufficiency of the evidence,
> we review the evidence de novo in the light most favorable to the
> prosecution. *Id.* at 515. We do not consider whether any evidence existed
> that could support a conviction; rather, we must determine whether a
> rational trier of fact could find that the evidence proved the essential
> elements of the crime beyond a reasonable doubt. *Id.* at 513-514.

16

To support a conviction for second-degree home invasion, the prosecutor must prove that "defendant (1) entered a dwelling, either by a breaking or without permission, (2) with the intent to commit a felony or a larceny in the dwelling." *People v. Nutt*, 469 Mich. 565, 593; 677 N.W.2d 1 (2004); MCL 750.110a(3). "Because it is difficult to prove an actor's state of mind, only minimal circumstantial evidence is required." *People v. McGhee*, 268 Mich. App. 600, 623; 709 N.W.2d 595 (2005).

Evidence was presented to establish that, at the time Muenchow was away from his home, defendant was casing the neighborhood and at one point was in Muenchow's yard and driveway. Shortly thereafter, police officers found defendant in Muenchow's neighborhood carrying a duffle bag. After returning home on the day in question, Muenchow discovered that his kitchen door was damaged. Forensic test results of the door revealed a shoe print that matched the treads of defendant's shoes. Muenchow also indicated that his Sam's Club card and duffle bag, among other items, were missing from his home. After defendant was arrested, officers found the Sam's Club card and duffle bag in defendant's vehicle. Later, during a police interview, defendant indicated that he could retrieve items that were stolen from Muenchow's house if he were released on bond.

Given that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *Carines, supra* at 757, quoting *People v. Allen*, 210 Mich. App. 98, 100; 505 N.W.2d 869 (1993), it is reasonable to infer that defendant broke into Muenchow's home without permission and with the intent to commit a larceny. Therefore, the evidence was sufficient to support defendant's conviction.

*Range*, 2007 WL 2380277 at *8-9.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The question on a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential

17

elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A federal habeas court views this standard through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under AEDPA, challenges to the sufficiency of the evidence "must survive two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Furthermore, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). The "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788-89.

To prove second-degree home invasion under Michigan law, the prosecution must establish that the defendant entered a dwelling by breaking or without permission, and that the defendant either had the intent to commit a felony, larceny, or assault in the dwelling or committed a felony, larceny, or assault while entering, being present in, or exiting the dwelling. Mich. Comp. Laws § 750.110a(3); *People v. Nutt*, 677 N.W.2d 1 (Mich. 2004). Identity is an element of every offense. *People v. Yost*, 749 N.W.2d 753 (Mich. App. 2008). Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an

offense, *People v. Nowack*, 614 N.W.2d 78, 81 (Mich. 2000); *People v. Jolly*,502 N.W.2d 177, 180 (Mich. 1993), including identity.  *People v. Kern*, 149 N.W.2d 216 (Mich. App. 1967).

In this case, the victim's testimony about the break-in and the items taken from his home, the neighbors' testimony about seeing Petitioner near the home that day, the police observations of Petitioner in the area near the time of the break-in, the police recovery of the victim's duffle bag and Sam's Club card from Petitioner's car, the shoe print evidence, and the police testimony relating Petitioner's comment that he could retrieve other stolen items provided sufficient evidence to support Petitioner's conviction for second-degree home invasion.

Petitioner challenges the jury's evaluation of the evidence and the inferences that the jury drew from the testimony.  However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts.  *Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").  The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable.  Habeas relief is not warranted on this claim.

### 5. Non-Disclosure of Evidence

Petitioner also asserts that he is entitled to habeas relief because the prosecution failed to disclose certain evidence.  Specifically, he asserts that the

prosecution withheld the following items: (1) a photograph taken by Officer Wysong which would have showed that there was no visible shoe print on the victim's door, (2) a scout car video of him picking up the duffle bag from a lawn, and (3) a police station video of officers manufacturing false shoe print evidence against him. Petitioner raised the first issue on direct appeal. The Michigan Court of Appeals denied relief finding that even if the photograph showed no visible shoe print on the door, such evidence was not exculpatory or outcome determinative. *Range*, 2007 WL 2380277 at *9. Petitioner raised the other issues on collateral review. The state trial court denied relief on the second claim finding that Petitioner failed to show that the scout car video would have shown that he did not break into the house but merely found the duffle bag on a lawn and that he failed to show that the video was unavailable due to the bad faith of the police. *Range*, No. 05-010939-01 at *2-3. As to the third claim, which Petitioner raised as part of his ineffective assistance of counsel claim, the state trial court found that the same or similar issues were raised on direct appeal, that it was bound by the appellate court's decision as to such matters, and denied relief. *Id.* at *7.

The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[2] There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). A prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). To find a *Brady* violation, not only must the

---

[2]The court would reach the same result under a *de novo* standard of review.

20

evidence be suppressed, it must be material and favorable to the defense. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985). Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432–36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra*; *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976). A *Brady* violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of guilt. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). The petitioner bears the burden of establishing a *Brady* violation. *Id.*

Petitioner fails to meet his burden. As to any photograph taken by Officer Wysong, Petitioner fails to show that the photograph would have been exculpatory. To be sure, the prosecution never claimed that a visible shoe print was recovered from the

21

door.  Rather, the prosecution presented evidence that the shoe print was only apparent after forensic analysis.  As to the scout car video, Petitioner fails to establish that any such video shows him picking up the duffle bag from a lawn.  The police reports and the police testimony indicate that the police officers observed Petitioner carrying the bag while walking in the area on the night of the crime and that the police later recovered the duffle bag from his car during a traffic stop.  As to the alleged manufacturing of evidence, Petitioner fails to establish that any such video exists or to otherwise support this claim with evidence, such as testimony from Officer Price who Petitioner asserts told him of the improper activity.  Moreover, if Petitioner's claim is to be believed, he was aware of the underlying facts to support this claim at the time of his arrest and could have requested the video or questioned Officer Price about such matters at trial.

In short, Petitioner fails to establish a *Brady* violation in his pleadings.  His conclusory allegations are insufficient.  *See, e.g., Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007) (conclusory allegations are insufficient to justify habeas relief); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide a basis for evidentiary hearing on habeas review).  Habeas relief is not warranted on this claim.

### 6.  Admission of Arrest Evidence

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting evidence of the traffic stop that led to his arrest.  Petitioner was

pulled over because his license plate did not match the make of his car.  He was arrested when the officer discovered the outstanding burglary warrant.  Petitioner first raised this claim on collateral review.  The state trial court denied relief on this claim finding that the evidence was relevant and admissible to explain the circumstances and the legality of Petitioner's arrest.  *Range*, No. 05-010939-01 at *13-14.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[3]  As discussed, trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief.  *Estelle*, 502 U.S. at 67-68.  Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *Bugh*, 329 F.3d at 512.  Thus, to the extent that Petitioner asserts that the trial court erred in admitting the arrest testimony under Michigan law, he merely alleges a state law violation which does not justify federal habeas relief.  *Bey*, 500 F.3d at 519.  State courts are the final arbiters of state law and the federal courts will not intervene in such matters.  *Lewis*, 497 U.S. at 780; *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Additionally, as to the admission of other acts, the United States Supreme Court has declined to hold that "other acts" evidence is so extremely unfair that its admission violates fundamental conceptions of justice.  *Dowling v. United States*, 493 U.S. 342, 352–53 (1990).  Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the

---

[3]The court would reach the same result under a *de novo* standard of review.

23

form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Consequently, there is no

Supreme Court precedent that the state court decisions could be deemed "contrary to"

under 28 U.S.C. § 2254(d)(1).  *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 716

(E.D. Mich. 2003). Petitioner thus fails to state a claim upon which habeas relief may

be granted as to this issue.

Furthermore, even if Petitioner states a cognizable claim, he is not entitled to

relief.  He has not shown that the admission of the arrest evidence rendered his trial

fundamentally unfair.  The evidence was relevant and admissible under state law to

explain the circumstances of his arrest.  The prosecution did not make an improper

propensity argument at trial.  Petitioner fails to establish that the admission of the arrest

evidence was erroneous or, more importantly, that it rendered his trial fundamentally

unfair.  Habeas relief is not warranted on this claim.

### 7.  Accuracy of Trial Transcripts

Petitioner also asserts that he is entitled to habeas relief due to inaccuracies in

the trial transcripts, which he claims adversely affected his appellate rights.  Petitioner

first raised this claim on collateral review.  The state trial court denied relief finding that

he failed to support his claim with evidence to demonstrate the alleged inaccuracies

and that he abandoned the claim on appeal.  *Range*, No. 05-010939-01 at *14.

The state court's decision is neither contrary to Supreme Court precedent nor an

unreasonable application of federal law or the facts.[4]  A conviction based on "a

seriously disputed record, whose accuracy petitioner has had no voice in determining,

---

[4]The court notes that it would reach the same result under a *de novo* standard of review.

24

cannot be allowed to stand." *Chessman v. Teets*, 354 U.S. 156, 164 (1957).  A transcript failing to capture the entirety of the proceedings, however, "is not a per se denial of [the] due process right to a fair appeal." *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir.1986) (rejecting defendant's contention that a transcript missing the jury instructions resulted in a denial of his due process rights).  To demonstrate denial of a fair appeal, a habeas petitioner must show that prejudice, something more than gross speculation, resulted from a missing transcript or missing portion of a transcript.  *Id.* ("Any time a page is missing from a transcript we cannot assume that reversible error may have been reflected on that page, but rather some modicum of evidence must support such a conclusion."); *see also Scott v. Elo*, 302 F.3d 598, 604 (6th Cir. 2002) (citing *Bransford*).

In this case, Petitioner asserts that his trial transcripts are missing the following items:  (1) an objection and response concerning the single photograph during Jonathan Vincent's testimony; (2) portions of Detective Borisch's testimony where he allegedly testified about the statistical sales of Petitioner's brand of shoes; and (3) the trial judge laughing during defense counsel's closing argument, which caused the jury to laugh as well.  The trial transcripts, however, do not reflect any unusual breaks or transitions in the testimony -- and the court reporter certified that the transcripts were accurate.  *See, e.g., White v. Klee*, No. 12-13996, 2014 WL 4658257, *7-8 (E.D. Mich. Sept. 17, 2014) (denying habeas relief on similar claim where the petitioner failed to provide evidence of inaccuracies and the transcripts were certified to be correct). Moreover, Petitioner fails to support his assertions with anything from the record or any source other than himself, such as defense counsel, another party, the court reporter,

or an updated transcript.  Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis for an evidentiary hearing on habeas review).  Lastly, Petitioner fails to establish that such matters prejudiced his right to a fair appeal. Petitioner was able to challenge the evidence against him, including the identification and shoe print evidence, and to raise many other issues on direct appeal and collateral review of his conviction.  Habeas relief is not warranted on this claim.

### 8.  Delay in Arraignment

Petitioner asserts that he is entitled to habeas relief because more than 48 hours elapsed between the time of his arrest and his arraignment.  Essentially, he claims that the police seizure of his shoes and the duffel bag was improper, that the evidence was the fruit of an illegal arrest, and that such evidence should have been suppressed under the Fourth Amendment because he was not arraigned within 48 hours of his arrest and the Supreme Court has found such a delay to be presumptively unreasonable.  *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56-57 (1991). Petitioner also cites *United States v. McNabb*, 318 U.S. 332 (1943), and *United States v. Mallory*, 354 U.S. 449 (1957), in support of his claim.  Petitioner first raised this issue on collateral review.  The state trial court denied relief ruling that pre-arraignment delay is just one factor to be considered in determining whether statements or other evidence should be suppressed, that Petitioner had not shown that any of his statements were

the result of police coercion, and that the Michigan Court of Appeals had ruled that the shoe print evidence as properly admitted. *Range*, No. 05-010939-01 at *14-16.

The state court's denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application thereof.[5]  Petitioner is not entitled to habeas relief on this claim for several reasons.  First, Petitioner is not entitled to habeas relief on any claim that his Fourth Amendment rights were violated by the delay in arraignment. Such a claim is not cognizable on habeas review because Petitioner had a full and fair opportunity to litigate the issue in the Michigan courts.  *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976).  Second, it is an "established rule that illegal arrest or detention does not void a subsequent conviction."  *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) (citing *Frisbie v. Collins*, 342 U.S. 519 (1952), and *Ker v. Illinois*, 119 U.S. 436 (1886)). Thus, "although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause."  *Gerstein*, 420 U.S. at 119.  Because Petitioner is now incarcerated pursuant to a valid conviction, he cannot challenge his conviction on the basis of an alleged defect in the state court's preliminary procedures.  *See, e.g., Montoya v. Scott*, 65 F.3d 405, 421 (5th Cir.1995). Third, the federal cases relied upon by Petitioner do not provide a basis for habeas relief.  In *McLaughlin*, the Supreme Court held that a delay in arraignment of more that 48 hours after a warrantless arrest is presumptively unreasonable absent extraordinary circumstances.  *McLaughlin*, 500 U.S. at 56-57.  In this case, Petitioner was arrested pursuant to a burglary warrant and was not subject to a warrantless arrest.

---

[5]The court would reach the same result under a *de novo* standard of review.

Consequently, *McLaughlin* is inapplicable and does not provide a basis for relief.  The

*McNabb-Mallory* rule applies to confessions that violate the prompt presentment

requirement of Rule 5 of the Federal Rules of Criminal procedure.  *See Corely v.*

*United States*, 556 U.S. 303, 309 (2009) (citing *United States v. Alverez-Sanchez*, 511

U.S. 350, 354 (1994)).  The rule is not constitutional in nature and does not apply to

state criminal proceedings.  It thus does not provide a basis for habeas relief under 28

U.S.C. § 2254.  *Ahlswede v. Wolff*, 720 F.2d 1108, 1110 (9th Cir. 1983); *Van-Ermen v.*

*Burke*, 398 F.3d 329, 330 n. 1 (7th Cir. 1968).  Petitioner fails to establish a violation of

his constitutional rights.  Habeas relief is not warranted on this claim.

### 9. Effectiveness of Trial Counsel

Petitioner asserts that he is entitled to habeas relief because trial counsel was

ineffective for:  (1) failing to question Officer Wysong regarding a statement that there

was "no visible shoe print" on the victim's door, (2) failing to investigate and request an

adjournment to question forensic expert Guy Nutter, (3) failing to question Officer Price

about the shoe print evidence, and (4) failing to obtain and review the scout car video.

Petitioner raised the first issue on direct appeal.  The Michigan Court of Appeals

denied relief finding that Officer Wysong never gave such testimony, that the statement

was found in Officer's Price's report after the investigation of the victim's home, and

that the statement did not conflict with the other evidence at trial such that trial

counsel's decision not to so question Officer Wong and not to call Officer Price was

sound trial strategy.  *Range*, 2007 WL 2380277 at *3.  Petitioner raised the other

issues on collateral review.  The state trial court denied relief finding that the same or

similar issues were raised on direct appeal and that it was bound by the appellate

court's decision as to such matters.  *Range*, No. 05-010939-01 at *6-7.

The state courts' decisions are neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[6]  The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

To satisfy the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance."  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689. There is a strong presumption that trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.

As to the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient

---

[6]The court would reach the same result under a *de novo* standard of review.

to undermine confidence in the outcome of the proceeding.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance.  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Harrington*, 562 U.S. at 105 (internal and end citations omitted).  "When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

In this case, Petitioner fails to establish that trial counsel was deficient for not questioning Officer Wysong about the observation that there was "no visible shoe print" on the victim's door or calling Officer Price to testify about it.  First, Officer Wysong did not make the statement, rather it was found in the police report prepared by Officer Price.  Second, the statement does not conflict with the other evidence at trial because while Detective Borisch testified that smudges were visible in the door photographs, he only said that they could be shoe prints, and expert witness Guy Nutter testified that he only found the shoe print after utilizing forensic evidence techniques.  Given such circumstances, trial counsel may have reasonably decided not to question Officer Wysong or call Officer Price about this issue.

30

With respect to expert witness Guy Nutter, the record indicates that trial counsel objected to the late addition of this witness, but the trial court overruled the objection. Petitioner asserts that trial counsel should have moved for a continuance to prepare for a proper cross-examination. The record, however, indicates that trial counsel challenged the expert's conclusion on cross-examination and got him to admit that the shoe print could have been made other shoes of the same size and tread pattern. This was a reasonable trial strategy under the circumstances. Moreover, Petitioner provides no evidence regarding what counsel could have discovered or what more counsel could have done which would have affected the questioning of this witness. As discussed *supra*, conclusory allegations are insufficient to justify habeas relief. *Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771. Petitioner fails to show that trial counsel erred or that he was prejudice by counsel's conduct.

As to the remaining issues concerning the fabrication of the shoe print evidence and the scout car video, Petitioner's claims are conclusory and chimerical. He offers no evidence to support his claim that the shoe print evidence was fabricated, that Officer Price would have testified as to such matters, or that the scout car video would have offered any exculpatory information. Consequently, Petitioner fails to establish that trial counsel erred and/or that he was prejudiced by counsel's conduct regarding such matters. Habeas relief is thus not warranted on these claims.

### 10. Effectiveness of Appellate Counsel

Lastly, Petitioner asserts that he is entitled to habeas relief because appellate counsel was ineffective for failing to raise the foregoing issues on direct appeal. Petitioner first raised this claim on collateral review. The state trial court denied relief

31

finding that the claim lacked merit – and the state appellate courts denied relief under Michigan Court Rule 6.508(D).

The state courts' denial of relief is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.[7]  As discussed *supra*, in order to establish ineffective assistance of counsel, a habeas petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687.  With regard to appellate counsel, it is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal.  *See Jones v. Barnes*, 463 U.S. 745, 751 (1983).  The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy . . . .  Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id*. at 754.  Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52).  "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).  Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a

---

[7]The court would reach the same result under a *de novo* standard of review.

"dead-bang winner," defined as an issue which was obvious from the trial record and would have resulted in reversal on appeal. *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

In this case, Petitioner fails to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel raised substantial claims on direct appeal, including the late endorsement claim, an ineffective assistance of trial counsel claim, and sentencing claims. None of the other claims subsequently raised by Petitioner are "dead-bang winners." Moreover, even if appellate counsel erred in some fashion, Petitioner cannot show that he was prejudiced by counsel's conduct because the underlying claims lack merit. *See* discussion *supra*. Habeas relief is not warranted.

### C.  Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The court concludes that Petitioner has not made a substantial showing of the

denial of a constitutional right as to his habeas claims.  Accordingly, the court declines to issue a certificate of appealability.

## V.  CONCLUSION

Based on the foregoing discussion, the court concludes that Petitioner's claims lack merit and do not warrant federal habeas relief.  Accordingly,

IT IS ORDERED that the Petition for a writ of habeas corpus is DENIED and the Petition is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT the court DECLINES to issue a certificate of appealability.

S/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  April 30, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 30, 2015, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C2 ORDERS\09-10945.RANGE.wpd